Chief Justice Marshall
delivered the opinion of the Court.
Steele having a judgment against Divine, on which' an execution had been returned “no property found,”' filed this bill to obtain payment of his debt by appropriating thereto the rent of a building erected under the following circumstances: Divine being'largely indebted, conveyed his property to trustees for the payment • of certain debts, not including the demand' of the complainant. Brown acquired the equity of redemption or *324 a rjght to the trust property which should remain after paying the trust debts. Divine continued to occupy, as a tavern, a house and lot in Versailles, and during the pendency of the trust he, with the consent of the trustees and by the request of Brown, erected with his own means an addition or wing to the tavern house, and upon the same lot, which cost and is worth $500, and which adds to the annual value of the house, &c., about $120. The trust debts were paid and the trust accomplished without touching these premises; and about the first of January, 184S, Brown rented them to a stranger for $500 a year, for that and the following year. All necessary parties having been brought before the Court, a decree was rendered requiring $120 of the rent of each of the years 1848 and 1849 to be paid to the complainant, and directing a commissioner, on the 1st day of January, 1850, to rent out the wing or addition for one year, and the right of making future orders and decrees, affecting the subject, was reserved. At a subsequent day of the same term, this decree was so modified as to offer to Brown the purchase of the wing or additional building at the sum of $500, secured by bonds, payable in one and two years, from the first of January, 1850 — the acceptancy of which offer was to discharge all claims for rent after the said first day of January.
An insolvent debtor conveyed his property to trustees for the benefit of certain creditors, a third person acquired the equity of redemption in the property, a part of the real property remained after payment of debtsupon which additional buildings had been made by consent of the holder of the equity. A creditor not provided for, had a judgment and a return of^ ?mZfe his bill to have £he™ent and in?f l£e debtor in tho property — Heidi that lie ivas cntitled to relief to valiie^nhe1 im°piovements, and-that value,
*324 The bill, as should have been before stated, prays for general relief, and therefore authorizes such relief, as upon the facts stated in it, is appropriate and equitable. It does not charge fraud in any arrangement between Brown and Divine. But it presents the case of the complainant’s embarrassed and insolvent debtor, expending his own means which should have gone to the payment of his debt upon the lot of Brown by his consent and request to the permanent and material enhancement of its value, the debtor himself in the meantime enjoying the property for a year or two, while it was protected by the trust deed, after which Brown assumed the proprietorship and possession. It seems to „us that 'the case comes, substantially, within the *325 principle of the case of Athey vs Knotts, &c., (6 B. Monroe, 24.) And that a debtor cannot be permitted thus to withdraw from his creditors the means which he should have applied to the satisfaction of their 'demands. If the expenditure had been solely for the benefit of Brown, without anv advantage to Divine, the latter ’ ' ° would have had a good cause of action for so much , , , . . -n ' , , money expended, or work done at Brown’s request, When the expenditure was made, the legal title was in the trustees and the property was under their control; and although it was probably then understood, or at least expected, that this property would be ultimately freed from the trust and devolve upon Brown, there was, probably, some uncertainty, both as to the time and the extent to which this would happen. And as it does not appear in what manner Brown acquired his interest, nor by what title he held it, we cannot assume that he had such title as would have authorized him to take or control the possession, until he actually did so about the first of January," 1848; and cannot, therefore, assume that Divine derived any remuneration from Brown by reason of his occupation of the premises pri- or to that time. Nor has either of these parties, both of whom failed to answer, alleged that Brown has to any extent made compensation for the benefit which his property has received from the expenditures made upon it at his request. That benefit may be assumed to have been equal to $500 when Brown took possession or .control on the first of January, 1848. And to that extent Divine had in equity and good conscience a claim upon him which constitutes a chose in action, liable under our statutes to be subjected to his debts. Whether any arrangement which Brown and Divine might have made for compensating the latter by a continued occupation of the premises, would have been valid against creditors, is a question not necessary to be decided, as no such arrangement is suggested in the pleadings. We suppose, however, that if there had been, in substance, a lease, such an interest would have been subject to creditors. The fact appearing in the *326 proof, but not referred to in the pleadings, that by arrangement between Brown and the lessees for the two years 1848 and 1849, Divine was to receive the benefit of the lease to the extent of $300 for each year, furnishes, in its most favorable aspect for the defendants, the evidence of an acknowledged indebtedness by Brown to Divine, which may be assumed to have been for the building now in question. A more unfavorable inference might be that Brown was acting throughout for the benefit of Divine and to the injury of his creditors. But there being no allegation of payment on the one side, or of fraud on the other, the fact referred to can only be considered as corroborating th e assumption before made, that Divine was entitled to compensation to the extent that his improvement had enhanced the value of Brown’s lot. And as this claim, which was properly subject to be appropriated by attachment to the payment of his debts, gave him an equitable lien upon the building which he had erected, and if it was inseparable, also upon the ground which it covered, it was not inappropriate to decree that the complainant should be satisfied to the extent of this claim of his debtor out of the rent due and accruing, or from sale of the building to which the claim attached.
So far, therefore, there are sufficient grounds for the principle on which the decree is based. But according to the views which we have taken, the complainant was entitled to have from Brown, or from the rent or sale of the building in question, the sum of $500, its value when Brown got the possession, (1st January, 1848,) with legal interest from that time. And as it appears that the wing or addition to which this claim attaches, cannot be removed or separated from the main building, without serious injury to the wing or addition, and would probably be sacrificed at an inadequate price if sold separately, the claim should be satisfied out of the rent, as specifically prayed for, unless Brown should assume to pay it on such reasonable terms as were proposed in the modified decree. But by that decree he was required to pay $500 in addition to the $240 ap *327 propriated from the rents of 1848 and 1849, which is considerably more than $500, with its interest from the 1st January, 1848, for which the property was bound.
Kinkead and Breckinridge for plaintiffs; Porter and U. Turner for defendant.
Wherefore, the decree is reversed, and the cause remanded for a decree in conformity with this opinion.